## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD BLUE, JR. and RONELL CONNER, individually and on behalf of all others similarly-situated,** Plaintiffs, <br><br> v. <br><br> **UNIVERSITY OF PENNSYLVANIA,** Defendant. | CASE NO. _____ <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Ronald Blue, Jr. and Ronell Conner ("Plaintiffs") bring this Class Action Complaint for themselves and all others similarly-situated against the University of Pennsylvania ("Defendant") alleging as follows based upon information, belief, and the investigation of their counsel:

### NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Defendant, challenging its failure to properly secure and safeguard Plaintiffs' and other similarly-situated individuals' highly-sensitive, personally-identifiable information including: memos about Penn donors and their families, receipts of bank transactions, spreadsheets containing records of wire and ACH transactions of donations made by individuals, donors' addresses, Social Security numbers, phone numbers, and demographic information (collectively "PII" or "Private Information").

2.      The University of Pennsylvania is a private Ivy League research university located in Philadelphia, Pennsylvania.

3.      Plaintiffs and the Class members are students, alumni, donors, customers, and hospital patients of Defendant who were required to indirectly and/or directly provide Defendant

with their Private Information to complete donations, purchases, or payments ("the Class members"). By collecting, storing, and maintaining Plaintiffs' and the Class members' Private Information, Defendant had a resulting duty to secure, maintain, protect, and safeguard any Private Information it collected and stored against unauthorized access and disclosure through reasonable and adequate data security measures.

4.     Despite Defendant's duty to safeguard, the Private Information in its possession was compromised when an unauthorized party gained access to its information systems and exfiltrated sensitive data stored therein around October 31, 2025 (the "UPenn Data Breach").

5.     The UPenn Data Breach occurred when cybercriminals infiltrated Defendant's inadequately-protected network servers and accessed the Private Information stored there.

6.     After Defendant discovered the UPenn Data Breach and as part of its investigation, it determined that some PII may have been acquired on October 31, 2025.

7.     Defendant maintained the PII of Plaintiffs and the Class members in a negligent and/or reckless manner. In particular, the PII was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and the Class members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

8.     Defendant disregarded the rights of Plaintiffs and the Class members by intentionally, willfully, recklessly, and/or negligently failing to implement adequate and reasonable measures to ensure their PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

9.     As a result, Plaintiffs' and the Class members' PII was compromised by an unauthorized third-party. Plaintiffs and the Class members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

10.     As a direct and proximate result of Defendant's failure to implement and follow basic security procedures, Plaintiffs' and the Class members' Private Information is now in the hands of cybercriminals.

11.     Plaintiffs and the Class members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their, and similar forms of criminal mischief, risk which may last for the rest of their lives. Consequently, Plaintiffs and the Class members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

12.     Plaintiffs allege claims for negligence, breach of implied contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment arising from the UPenn Data Breach.  Plaintiffs seek relief on their claims that includes compensatory damages and injunctive relief including the adoption of reasonably sufficient practices to safeguard the Private Information in Defendant's custody to prevent incidents like the UPenn Data Breach from happening again and the provision of identity theft protective services to Plaintiffs and the Class members for their lifetimes.

## **PARTIES**

13.     Plaintiff Ronald Blue, Jr. is an adult citizen of the Commonwealth of Pennsylvania.  In early December 2025, Mr. Blue received a "Notice of Oracle Data Security Incident" letter advising that his full name, Social Security number, address, and banking information had been "impacted" by a data breach of its oracle E-Business Suite.

14.    Plaintiff Ronell Conner is an adult citizen of the Commonwealth of Pennsylvania. In early December 2025, Mr. Blue received a "Notice of Oracle Data Security Incident" letter advising that his full name, Social Security number, address, and banking information had been "impacted" by a data breach of its oracle E-Business Suite.

15.    Plaintiffs have suffered actual injury from having their Private Information exposed and/or stolen as a result of the UPenn Data Breach, including: (a) required mitigation efforts, including researching the UPenn Data Breach and needing to monitor their financial statements to ensure their information is not used for identity theft and fraud; (b) damages to and diminution of the value of their Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

16.    As a result of the UPenn Data Breach, and the sensitivity of the Private Information compromised, Plaintiffs will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

17.    Defendant is a private university with its principal executive office located at 3819 Chestnut Street, Suite 214, Philadelphia, Pennsylvania 19104.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

19.    This Court has personal jurisdiction over Defendant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

20.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

## FACTUAL ALLEGATIONS

21.    Defendant is university of higher education which specializes in studies across a wide range of academic disciplines, including business, medicine, law, engineering, and the social sciences.

22.    Plaintiffs and the Class members are Defendant's students, alumni, customers, patients, contractors, employees and/or donors.

23.    As a condition of making payments to Defendant, Plaintiffs and the Class members directly or indirectly entrusted Defendant with their sensitive Private Information.

24.    Plaintiffs and the Class members value the confidentiality of their Private Information and, according, have taken reasonable steps to maintain the confidentiality of their Private Information.

25.    In entrusting their Private Information to Defendant, Plaintiffs and the Class members reasonably expected Defendant to safeguard their Private Information.

26.    By obtaining, collecting, and storing Plaintiffs' and the Class members' Private Information related to their payments, Defendant assumed equitable and legal duties to safeguard Plaintiffs' and the Class members' Private Information, to only use this information for business purposes, and to only make authorized disclosures.

27.     Despite these duties, Defendant failed to implement reasonable data security measures to protect Plaintiffs' and the Class members' Private Information and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiffs' and the Class members' Private Information stored therein.

THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE

28.     Defendant understood that the Private Information it collects was highly-sensitive and of significant value to those who would use it for wrongful purposes.

29.     Defendant also knew that a breach of its computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

30.     These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

31.     Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."

32.     As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.  The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individual, businesses, and government entities in the U.S. In 2023 alone, there were 6,077 recorded breaches exposing more than 17 billion records - representing a 19.8% year-over-year increase in the United States compared to 2022.  This trend is mirrored in identity theft complaints, which nearly doubled over a four-year span—from 2.9 million reports in

2017 to 5.7 million in 2021.

33.     Indeed, a 2022 poll of security executives predicted an increase in attacks over the next two years from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."

34.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, 2024 had the second-highest number of data compromises in the U.S. in a single year since such instances began being tracked in 2005.

35.     The ramifications of Defendant's failure to keep Plaintiffs' and the Class members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."

36.     Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, e-mail address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

37.    The specific types of personal data compromised in the UPenn Data Breach makes the information particularly valuable to thieves and leaves Plaintiffs and other Class members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

38.    Based on the value of Plaintiffs' and the Class members' PII to cybercriminals, Defendant knew or should have known the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security systems were breached. Defendant failed, however, to take adequate cyber security measures to prevent the UPenn Data Breach from occurring.

**DEFENDANT BREACHED ITS DUTY TO PROTECT PLAINTIFFS'
AND THE CLASS MEMBERS' PRIVATE INFORMATION**

39.    On or about October 31, 2025, Defendant became aware of a cybersecurity event impacting its information systems. That same day, mass spam e-mails were sent from multiple University-affiliated e-mail addresses to Defendant's community containing criticisms of its security practices and institutional purpose.

40.    Following the discovery of the incident, Defendant began an investigation to discover the scope of the suspicious activity. Defendant's investigation confirmed that on or about October 31, 2025, an unauthorized third-party had gained access to defendant's information systems and successfully exfiltrated Private Information stored therein. The Private Information exfiltrated in the UPenn Data Breach includes internal University confidential talking points regarding high profile recent controversies that have affected Defendant, memos about donors and their families, receipts of bank transactions, spreadsheets containing records of wire and ACH transactions of donations made by individuals and corporations, donors' addresses, phone numbers, and demographic information.

41.    Around October 31, 2025, Defendant posted a "Cybersecurity incident information and FAQ" on its website which included, *inter alia*, an explanation that Defendant had learned of the UPenn Data Breach and what steps it had taken to respond. However, the information lacked sufficient information on how the breach occurred, what safeguards have been taken since then to safeguard further attacks, and/or where the information hacked exists today.

42.    On or about November 1, 2025, the hackers claiming responsibility for the breach, released thousands of pages of files on Leakforum, which included internal University talking points, memos about donors and their families, receipts of bank transactions, and personal identifying information. The hackers included a message with the leaked data claiming that they gained "full access" to a University employee's PennKey account and exported data on "1.2 million University of Pennsylvania students, alumni, and donors" from the University's databases.

43.    The alleged hackers made comments to *The Verge* stating that they plan to sell some of the data before publicizing it and that their main motivation behind the hack was financial.

44.    Based on Defendant's announcement of the UPenn Data Breach and the alleged hackers own communications, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiffs and the Class members and that the cybercriminals were successful in exfiltrating sensitive information from Defendant's information systems.

45.    All in all, the Private Information of approximately 1.2 million individuals was compromised in the UPenn Data Breach.

46.    Based on news reports, the UPenn Data Breach was the result of a successful social engineering attack, a hack in which an individual is tricked into handing over sensitive information, such as log-in credentials, through a phishing e-mail or phishing phone call.

47.    The successful social engineering attack enabled the threat actor to access Defendant's Salesforce account, Qlik analytics platform, SAP business intelligence system, and SharePoint files. Utilizing this unauthorized access, the threat actors were able to exfiltrate files that contained Plaintiffs' and the Class members' PII.

48.    While the threat actors have not leaked the stolen data on the dark web, they have indicated an intention to leak the information on the dark web in the near future.

49.    The UPenn Data Breach occurred as a direct result of Defendant's failure to implement and follow basic security procedures to protect its current and former donors' Private Information that it had collected and stored.

### DEFENDANT FAILED TO COMPLY WITH FTC GUIDELINES

50.    Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

51.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

52.    Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems:

a.    Identify all connections to the computers where sensitive information is stored;

b.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if e-mail service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

e.  Pay particular attention to the security of their web applications - the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls -settings that determine which devices and traffic get through the firewall - to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

53.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

54.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

55.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to its donors' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

56.    Defendant was at all times fully aware of its obligations to protect the PII of its donors given the reams of PII that it had access to as Plaintiffs' and the Class members' custodian of personal information. Defendant was also aware of the significant repercussions that would result from a failure to properly secure the Private Information it maintained.

**DEFENDANT'S FAILURE TO PREVENT, IDENTIFY, AND TIMELY REPORT THE DATA BREACH**

57.    Defendant admits that an unauthorized third-party accessed its information technology system and that Defendant discovered this unauthorized access on or about October 31, 2025.

58.    Defendant failed to take necessary precautions and failed to employ adequate measures necessary to protect its computer systems against unauthorized access and keep Plaintiffs' and the Class members' Private Information secure.

59.     The Private Information that Defendant allowed to be exposed in the UPenn Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

60.     Despite its knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices, Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

61.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs. Immediate notification to individuals impacted by a data breach is critical so that those impacted can take measures to protect themselves.

62.     Plaintiffs and the Class members remain in the dark regarding what data was stolen, the particular malware used, and what steps are being taken to secure their PII in the future. Thus, Plaintiffs and the Class members are left to speculate as to where their PII ended up, who has used it, and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the UPenn Data Breach and how Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

**PLAINTIFFS AND THE CLASS MEMBERS SUFFERED DAMAGES**

63.     The ramifications of Defendant's failure to keep Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

64.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiffs and the Class members will need to maintain these heightened measures for years, and

possibly their entire lives as a result of Defendant's conduct. Further, the value of Plaintiffs' and the Class members' Private Information has been diminished by its exposure in the UPenn Data Breach.

65.      PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. "Fullz" packages, which includes "extra information about the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.

66.      Plaintiffs and the Class members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the UPenn Data Breach. From a recent study, 28% of individuals affected by a data breach become victims of identity fraud - this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.

67.      Further, Plaintiffs and the Class members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the UPenn Data Breach.

68.      Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.

69.    Plaintiffs and the Class members are also at a continued risk because their information remains in Defendant's systems, which the UPenn Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as Defendant fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

70.    Plaintiffs and the Class members have suffered emotional distress as a result of the UPenn Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

71.    As a result of Defendant's failure to prevent the UPenn Data Breach, Plaintiffs and the Class members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the UPenn Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiffs' and the Class members' Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

72.    Furthermore, Defendant has yet to offer identity theft monitoring and/or identity theft protection for its customers. This lack of resolution is inadequate when the victims will likely face many years of identity theft.

73.    Moreover, Defendant's failure to have a credit monitoring offer to Plaintiffs and the Class members squarely place the burden on Plaintiffs and the Class members, rather than on

Defendant, to monitor and report suspicious activities to law enforcement. In other words, Defendant expects Plaintiffs and the Class members to protect themselves from its tortious acts resulting from the UPenn Data Breach. Rather than automatically enrolling Plaintiffs and the Class members in credit monitoring services upon discovery of the UPenn Data Breach, Defendant merely sent instructions to Plaintiffs and the Class members about actions they could affirmatively take to protect themselves.

74.    The absence of these services is wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and the Class members' PII.

## CLASS ALLEGATIONS

75.    Plaintiffs bring this class action for himself and all other individuals who are similarly-situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

76.    Plaintiffs seek to represent a Class that includes: "All individuals in the United States whose Private Information was compromised in the UPenn Data Breach" (the "Class").

77.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

78.    This proposed class definition is based on the information available to Plaintiffs at this time. Plaintiffs may modify the class definition in an amended pleading or when she moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

79.     Plaintiffs believe the Class contains more the one million members. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the UPenn Data Breach.

80.     This action involves questions of law and fact common to the Class including:

a.   Whether Defendant had a duty to protect the Private Information of Plaintiffs and the Class members;

b.   Whether Defendant was negligent in collecting and storing Plaintiffs' and the Class members' Private Information, and breached its duties thereby;

c.   Whether Plaintiffs and the Class members are entitled to damages as a result of Defendant's wrongful conduct; and

d.   Whether Plaintiffs and the Class members are entitled to restitution as a result of Defendant's wrongful conduct.

81.     Plaintiffs' claims are typical of the claims of the members of the Class.  The claims of the Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiffs and members of the Class were all donors of Defendant, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

82.     Plaintiffs is an adequate representative of the Class because their interests do not conflict with the interests of other Class members. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiffs has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiffs and the Class members are substantially identical as explained above.

83.     This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and

joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

84.    Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages is common to Plaintiffs and each member of the Class. If Defendant breached its duty to Plaintiffs and the Class members, then Plaintiffs and each Class member suffered damages by that conduct.

85.    Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

86.    Ascertainability: Members of the Class are ascertainable. Class membership is defined using objective criteria, and the Class members may be readily identified through Defendant's books and records.

## COUNT I
## NEGLIGENCE

87.    Plaintiffs re-allege the allegations above as if fully set forth herein.

88.    Plaintiffs and the Class members provided their Private Information to Defendant as a condition of making donations to Defendant.

89.     Defendant owed a duty to Plaintiffs and the Class members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII collected from them from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing, maintaining, overseeing, and testing Defendant's security systems to ensure that PII in Defendant's possession was adequately secured and protected.

90.     Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class members could and would suffer if their Private Information were wrongfully disclosed.

91.     Defendant owed a duty of care to Plaintiffs and the Class members to provide reasonable security, consistent with industry standards, to ensure that its systems and networks adequately protected their Private Information.

92.     Defendant had a special relationship with Plaintiffs and the Class members. Plaintiffs' and the Class members' willingness to entrust Defendant with their Private Information as a condition of receiving resources was predicated on the understanding that Defendant would take adequate security precautions to protect their PII.

93.     By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

94.     Plaintiffs and members of the Class entrusted Defendant with their PII with the understanding that Defendant would safeguard their information.

95.     Defendant's conduct also created a foreseeable risk of harm to Plaintiffs and the Class members by failing to: (1) secure its systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3)

implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the UPenn Data Breach.

96.     Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its systems, and the importance of adequate security. Defendant should have been aware of numerous, well-publicized data breaches in the months and years preceding the UPenn Data Breach.

97.     Defendant breached its common law duty to act with reasonable care in collecting and storing the Private Information of its donors, which exists independently from any contractual obligations between the parties. Specifically, Defendant breached its common law, statutory, and other duties to Plaintiffs and the Class members in numerous ways, including by:

      a.  failing to adopt reasonable data security measures, practices, and protocols;

      b.  failing to implement data security systems, practices, and protocols sufficient to protect Plaintiffs' and the Class members' PII;

      c.  storing former Plaintiffs' and the Class members' PII longer than reasonably necessary;

      d.  failing to comply with industry-standard data security measures; and

      e.  failing to timely disclose critical information regarding the nature of the UPenn Data Breach.

98.     Defendant's failure to implement and maintain adequate data security measures to protect Plaintiffs' and the Class members' Private Information created conditions conducive to a foreseeable, intentional criminal act in the form of the UPenn Data Breach. Plaintiffs and the Class members did not contribute to the UPenn Data Breach or the subsequent misuse of their Private Information.

99.    Defendant owed a duty of care to Plaintiffs and the Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

100.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiffs and the Class members of the UPenn Data Breach.

101.    Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiffs and the Class members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiffs and the Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

102.    Defendant has acknowledged that the Private Information of Plaintiffs and the Class members was disclosed to unauthorized third persons as a result of the UPenn Data Breach.

103.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class members.

104.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiffs and the Class members, the Private Information of Plaintiffs and the Class members would not have been compromised.

105.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their PII is used; (ii)

the publication and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the UPenn Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

106.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiffs and the Class members, the Private Information of Plaintiffs and the Class members would not have been compromised.

107.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and the Class members and the harm, or risk of imminent harm, suffered by Plaintiffs and the Class members. The Private Information of Plaintiffs and the Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

108.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy;

(ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the UPenn Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or e-mails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

109.    As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

110.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

111.    Defendant's violation of federal statutes, including the FTC Act, constitutes negligence *per se*.

112.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

113.    Plaintiffs and the Class members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

## COUNT II
## BREACH OF IMPLIED CONTRACT

114.    Plaintiffs re-allege the allegations above as if fully set forth herein.

115.    In connection with making donations to Defendant, Plaintiffs and the Class members entered into implied contracts with Defendant.

116.    Plaintiffs and the Class members were required to deliver their Private Information to Defendant as part of the process of making donations to Defendant.

117.    Defendant required Class members to provide their Private Information in order to make donations to Defendant. Plaintiffs and the Class members accepted Defendant's offers and provided their Private Information to Defendant.

118.    Defendant accepted possession of Plaintiffs' and the Class members' Private Information for the purpose of accepting donations from Plaintiffs and the Class members.

119.    When Plaintiffs and the Class members provided their PII to Defendant, either directly or indirectly, as a pre-condition for making donations, they entered into implied contracts with Defendant.

120.    Pursuant to these implied contracts, in exchange for the consideration and PII provided by Plaintiffs and the Class members, Defendant agreed to, among other things, and Plaintiffs and the Class members understood that Defendant would: (1) provide products and/or services to Plaintiffs and the Class members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiffs' and the Class members' PII; and (3) protect Plaintiffs'

and the Class members' PII in compliance with federal and state laws and regulations and industry standards

121.    In entering into such implied contracts, Plaintiffs and the Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

122.    Implicit in the agreement between Plaintiffs and the Class members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiffs and the Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiffs and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

123.    The protection of PII was a material term of the implied contracts between Plaintiffs and the Class members, on the one hand, and Defendant, on the other hand. Indeed, as set forth herein, Defendant recognized its duty to provide adequate data security and ensure the privacy of its donors' PII with its practice of providing a privacy policy on its website.

124.    Plaintiffs and the Class members performed their obligations under the implied contract when they provided Defendant with their PII.

125.    Defendant breached its obligations under its implied contracts with Plaintiffs and the Class members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiffs' and the Class members' PII in a manner that complies with applicable laws,

regulations, and industry standards.

126.    The mutual understanding and intent of Plaintiffs and the Class members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

127.    On information and belief, at all relevant times, Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiffs and the Class members that it would only disclose Private Information under certain circumstances, none of which relate to the UPenn Data Breach.

128.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiffs' and the Class members' Private Information would remain protected.

129.    Plaintiffs and the Class members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

130.    Plaintiffs and the Class members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

131.    Plaintiffs and the Class members fully and adequately performed their obligations under the implied contracts with Defendant.

132.    Defendant breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the UPenn Data Breach.

133.    Defendant breached the implied contracts by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the UPenn Data Breach to Plaintiffs and the Class members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the UPenn Data Breach.

134.    Defendant's breach of its obligations of its implied contracts with Plaintiffs and the Class members directly resulted in the UPenn Data Breach and the injuries that Plaintiffs and the Class members have suffered from the UPenn Data Breach.

135.    Plaintiffs and the Class members suffered by virtue of Defendant's breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the UPenn Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they have overpaid for the services they received without adequate data security.

136.    Plaintiffs and the Class members are entitled to compensatory, consequential, and nominal damages suffered as a result of the UPenn Data Breach.

137.    Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit

to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

## COUNT III
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

138.    Plaintiffs re-allege the allegations above as if fully set forth herein.

139.    Every contract in the Commonwealth of Pennsylvania has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

140.    Plaintiffs and the Class members have complied with and performed all conditions of their contracts with Defendant.

141.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the UPenn Data Breach to Plaintiffs and the Class members, and continued acceptance of PII and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the UPenn Data Breach.

142.    Defendant acted in bad faith and/or with malicious motive in denying Plaintiffs and the Class members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

143.    Plaintiffs re-allege the allegations above as if fully set forth herein.

144.    This count is plead in the alternative to the breach of implied contract count above.

145.    By its wrongful acts and omissions described herein, Defendant has obtained a

benefit by unduly taking advantage of Plaintiffs and the Class members.

146.    Plaintiffs and the Class members conferred a benefit on Defendant, whereby they provided their Private Information to Defendant in connection with making donations.

147.    Defendant prior to and at the time Plaintiffs and the Class members entrusted it with their PII, caused Plaintiffs and the Class members to reasonably believe that it would keep that Private Information secure.

148.    The monies Defendant was paid in its ordinary course of business included a premium for Defendant's cybersecurity obligations and were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiffs' and the Class members' Private Information.

149.    Defendant knew that Plaintiffs and the Class members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiffs' retained data and used Plaintiffs' and the Class members' Private Information for business purposes.

150.    Defendant failed to disclose facts pertaining to its substandard information systems, or defects and vulnerabilities therein before Plaintiffs and the Class members made their decisions to provide Defendant with their Private Information.

151.    Defendant enriched itself by hoarding the costs it reasonably should have expended on data security measures to secure Plaintiffs' and the Class members' Private Information. Instead of providing a reasonable level of security that would have prevented the UPenn Data Breach, Defendant calculated to increase its own profit at the expense of Plaintiffs and the Class members by utilizing cheap, ineffective security measures and diverting those funds to its own personal use. Plaintiffs and the Class members, on the other hand, suffered as a direct and proximate result

of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

152.    Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiffs and the Class members, and as a result, Defendant was overpaid.

153.    Under principles of equity and good conscience, Defendant should not be permitted to retain any of the benefits that Plaintiffs and the Class members conferred upon it.

154.    Plaintiffs and the Class members have no adequate remedy at law.

155.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the UPenn Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or e-mails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

156.    Plaintiffs and the Class members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and the Class members may seek restitution or compensation.

**COUNT V**
**DECLARATORY JUDGMENT**

157.    Plaintiffs re-allege the allegations above as if fully set forth herein.

158.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

159.    An actual controversy has arisen in the wake of the UPenn Data Breach regarding Plaintiffs' and the Class members' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and the Class members from further data breaches that compromise their PII. Plaintiffs alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continues to suffer injury as a result of the compromise of their PII and remains at imminent risk that further compromises of their PII will occur in the future.

160.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

161.    Defendant owes a legal duty to secure donors' Private Information and to timely notify impacted individuals of a data breach under the common law, and various state statutes.

162.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

163.    This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Private Information in Defendant's data network.

164.    If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will

not have an adequate remedy at law because many of the resulting injuries are not readily quantified and she will be forced to bring multiple lawsuits to rectify the same conduct.

165.    The hardship to Plaintiffs if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

166.    Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and donors whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    For an Order certifying this action as a class action, appointing Plaintiffs as class representative for the Class, and appointing their counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and the Class members;

C.    For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to customer data collection, storage, and safety, and to disclose with specificity the types of PII compromised as a result of the UPenn Data Breach;

D.    For equitable relief requiring restitution and disgorgement of the revenues

wrongfully retained as a result of Defendant's wrongful conduct;

E.     Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiffs and the Class members;

F.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.     For an award of punitive damages, as allowable by law;

H.     For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.     Pre- and post-judgment interest on any amounts awarded; and

J.     Such other and further relief as this court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury in the above-captioned matter.


                              Respectfully submitted,

Dated: December 17, 2025      */s/ David J. Cohen*
                              David J. Cohen
                              STEPHAN ZOURAS, LLC
                              604 Spruce Street
                              Philadelphia, PA 19106
                              215-873-4836
                              dcohen@stephanzouras.com

                              Ryan F. Stephan (*pro hac vice*)
                              James B. Zouras (*pro hac vice*)
                              STEPHAN ZOURAS, LLC
                              222 W. Adams Street, Suite 2020
                              Chicago, IL  60606
                              312-233-1550
                              jzouras@stephanzouras.com

                              *Counsel for Plaintiffs*